## Aaron Doyle v. The State.

Rape — Evidence. — Note evidence which, despite proof of *alibi*, is held sufficient to sustain a conviction for assault with intent to commit rape.

Appeal from the District Court of Navarro. Tried below before the Hon. D. M. Prendergast.

The indictment was for rape, committed upon the person of Fanny Hickman, a female of the age of five years, by appellant, who was a male of the age of eighteen years. The conviction was for assault with intent to commit rape, and the punishment was assessed at seven years in the penitentiary. The parties were negroes.

Harriet Hickman testified, for the State, that she is the mother of Fanny Hickman, a female child of five years, upon whom the offence was charged to have been committed. Before dark sometime, on the evening the offence was committed, witness left her children, Fanny and Jasper, a boy of ten years, at the home of witness, and started to church. She went by the house of Martha Hughes, to get the appellant to go and stay with the two children until her return. She found the appellant and Harriet Howard there, and asked appellant to go and stay with her children until her return. Appellant did not say whether he would go or not, and witness went on to church. Church "broke up" at the usual hour that night, — about nine o'clock, — and witness, in company with a man, returned to her house immediately, and found the door, which she left fastened, taken down, and the two children sitting by the fire, Fanny crying and complaining. Upon examination of the child, witness found her private parts bruised and bleeding, and found blood upon her dress. Witness also found a large spot of blood on the bed. The door was very heavy, and, having no hinges, the witness thinks it would take a man to take it down.

Jasper Hickman, testifying for the State, identified appellant, pointing him out to the jury. About dark, the mother of witness, taking something to eat, started to church, leaving witness and his sister Fanny in the house. Witness and Fanny ate supper shortly after, and immediately the two went to bed together. After they had been some time asleep, some one entered the house and got in bed with them. It awakened witness, and he got out of bed, between the bed and wall, leaving Fanny in bed. Witness did not then know who it was that got in bed with them, nor did he know until he had made a light and built up a fire. He then recognized him, by his breeches and hat, as the appellant. Appellant then ordered witness not to build a fire, — speaking in a gruff voice. As appellant passed out of the door, he turned his head, and witness distinctly recognized him as appellant. Witness had picked cotton with appellant, and knew him well. Fanny complained that appellant had " done her bad."

J. W. Edens, for the State, testified that the distance from Harriet Hickman's house to that of Martha Hughes, where appellant lived, is about four hundred yards, and that there are a great many negroes living in houses between the two points. Here the State rested.

Martha Hughes, for the defendant, testified that she is the mother of defendant, and was at home, at her house, with defendant and Harriet Howard, on the night when Harriet Hickman, the mother of the child alleged to have been outraged, came by and asked defendant to go and stay with her children until she returned from church. Witness states that defendant first consented but subsequently refused to go, and that defendant remained in the same room with Harriet Howard all night. That defendant slept in the same room with Harriet Howard, and retired at about nine o'clock, and did not get up until morning. Witness states that, after going to bed, defendant could not have left

the house without getting out at the window, which would have awakened witness, and which he did not do.

Harriet Howard, for the defence, testified that she was at the house of the last witness on the night the offence is alleged to have been committed, which was a cold and disagreeable night. Witness was in the house when Harriet Hickman came by and asked appellant to go and stay with her children while she was absent at church. That witness and defendant slept in different beds, in the back room of the house. That witness and appellant went to bed at the same time, which was a little before the passenger-train came in. The door of the front room was locked, with the key in the inside of the door. Witness locked the door herself, as she and appellant sat up some time after Martha Hughes retired, and the inside of the door of appellant's and witness's room was bolted, with a table against it from the front. There was a window in this room. Witness stayed awake until the passenger-train came in that night. Appellant had been in the house up to that time since dark, and was then in bed. Doesn't know what time the passenger-train came in, but it was late at night.

E. O. Call, for the defence, testified that the passenger-train came in about ten o'clock, or half-past ten, on the night when the offence was charged to have been committed.

Laura Jackson, for the defence, testified that Harriet Hickman told her, subsequent to the alleged offence, that she (Harriet Hickman) trained her children two or three times a day in what to swear on the trial of this cause, and that if she could sink appellant she would do it. Witness had told many people that Harriet Hickman had told her this. Witness further states that Cajah Hughes, the father of appellant, asked her (witness) if she was going to swear to what Harriet Hickman had said about training her children. Cajah Hughes asked witness this in the court-house,

on the day of the trial. Witness lives with Martha Hughes, mother of appellant.

Harriet Hickman, recalled for the prosecution, testifies that she never told Laura Jackson that she trained, or was training, her children what to say on the trial; and that she only told the children to swear to the truth.

Dr. Blair, for the State, testified that Harriet Hickman brought the child Fanny to him on the day after the offence was alleged to have been committed. Upon examination, witness, who is a physician, found her private parts swollen and bruised, and the cuticle on each side was torn up and rubbed off somewhat. Could not say that penetration had been effected. From physical " make-up " and development, would say the appellant was about eighteen years old.

*Hardy & Neblett*, for the appellant.

*W. B. Dunham*, Assistant Attorney-General, for the State.

White, J. Appellant, who was about eighteen years of age, was indicted for rape, alleged to have been committed by him upon the person of one Fanny Hickman, a female of the age of five years. He was convicted of an assault with intent to commit rape, and his punishment assessed at confinement in the penitentiary for a period of seven years.

It is strenuously insisted, in the very able brief of counsel, that the evidence of the identity of defendant is at once improbable and insufficient. The testimony was that of the boy Jasper Hickman, who was a brother of the girl, and whose age was nine or ten years. Jasper was the only other person in the house when the deed was committed. He knew the defendant, recognized him that night " by his

breeches and hat," and afterwards, he says, as he was about to pass out at the door, "he looked back and I saw his face; it was Aaron Doyle. I had picked cotton with Aaron all the fall before, and knew him well." To our minds there is nothing unreasonable or improbable in his statement. It is both intelligent, positive, and clear, and seems to have impressed the learned judge and honest jury who tried the case with its truthfulness, both as to defendant's identity and guilt.

The charge of the court was a full and fair exposition of the law upon the crimes of rape and assault with intent to commit rape, and the jury were told, not only to acquit the defendant if they had a reasonable doubt of his guilt, but they were specially instructed that this reasonable doubt applied as well to the personal identity of the defendant as to the other facts going to constitute the crime.

The other defence was an *alibi*, and though two witnesses swore positively to facts establishing it, the jury did not, nor did the judge presiding, credit the truth of their testimony; on the other hand, they have credited the witnesses for the prosecution. That the crime was committed by some one is not questioned; that it was committed by defendant has been ascertained, after a most fair and impartial trial, at which all his rights were carefully guarded and he most ably defended. We see no occasion to disturb the judgment of the court below, and it is therefore affirmed.

*Affirmed.*